**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MELVIN WILLIAMS,

              Plaintiff,                          CASE NO. 05-60018

v.                                        HON. MARIANNE O. BATTANI

KIA MOTORS AMERICA, INC., PETER
M. BUTTERFIELD, and JOHN HIRSHFIELD,

              Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Kia Motors America, Inc.'s ("KMA") Motion for Summary Judgment (Doc. # 31). The Court heard oral argument on September 21, 2005. At the conclusion of the hearing, the Court took the matter under advisement. For the reasons that follow, the Court GRANTS KMA's motion.

**I.  STATEMENT OF FACTS**

Plaintiff filed this product liability action against KMA after his 2002 Kia Spectra caught on fire. KMA imports and distributes the Kia brand motor vehicles in the United States.

According to Plaintiff, he was driving in Pennsylvania on November 28, 2004, when he lost acceleration and brake power as he drove onto a ramp. Def.'s Ex. 3, Williams Dep. at 65. Plaintiff pulled to the side of the road. Id. In his deposition, Plaintiff testified that his engine had been "missing"--that a spark plug was not firing. Id  The car was under

1

warranty at the time of the incident.

In his complaint, Plaintiff asserts that his auto mechanic advised him "on January 17, 2004, that the Kia Spectra was prone to inflame while being driven because it has a defective catalytic converter that overheats and causes open flames." Def.'s Ex. 2, Compl. at 1-2.    Plaintiff also alleges that "Defendant has failed to notify lease customers and owners of this defect." Id. at 2.  Plaintiff asks for damages to recover "personal property losses from fire, to recover for emotional and physical pain and suffering, and to recover for loss of transportation." Id.

## II.  STANDARD OF REVIEW

Pursuant to Fed. R. Civ. Proc. 56(c), a motion for summary judgment is to be granted only if the evidence indicates that no genuine issue of material fact exists.  To avoid summary judgment, the opposing party must have set out sufficient evidence in the record to allow a reasonable jury to find for him at trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

The sufficiency of the evidence is to be tested against the substantive standard of proof that would control at trial.  Anderson, 477 U.S. 242.  The moving party has the burden of showing that there is an absence of evidence to support the non-moving party's case.  Celotex v. Catrett, 477 U.S. 317, 325 (1986).  "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. In disposing of a motion for summary judgment, this Court must consider the evidence in the light most favorable to the nonmoving party, but may weigh competing inferences for their persuasiveness.  Matsushita, 475 U.S. at 574.

2

### III.  ANALYSIS

Although Plaintiff, who is proceeding *pro se*, does not identify any theory of liability in his Complaint, there is no dispute that his claim sounds in product liability.[1]  KMA asserts that it is entitled to summary judgment under any theory supporting a product liability claim. Because this matter is here on diversity of citizenship, Michigan law applies. Erie R.R. v. Tompkins, 304 U.S. 64 (1938), Micro-Electronic Corp. v. Bamberger's, 434 F.Supp. 168, 169 (1977).   The Court addresses the arguments below.

### A.  Liability of a non-manufacturer seller

KMA asserts that it did not design, manufacture, test repair or service Plaintiff's car or any of its component parts.  Therefore, it concludes that is not liable for any alleged negligence in design or manufacture of the car.   The Court agrees.

Under Michigan law, a non-manufacturing seller cannot be held liable for negligent/defective design or manufacture.  See Adams v. Mejer, Inc., 2001 WL 1657310 (Mich.App. Dec. 18, 2001) (observing that a seller's legal responsibility in a cause of action sounding in products liability is limited by the language of the governing statute). Plaintiff does not advance evidence to dispute KMA's status as a non-manufacturing seller. Accordingly, the Court holds that to the extent Plaintiff is proceeding on a  claim of a design or manufacturing defect, it fails as a matter of law.

---

[1] The Complaint contains no allegations as to Defendant Butterfield, and he was never served.  The sole factual allegation as to Defendant Hirshfield is that he issued a reference number to Plaintiff after Plaintiff contacted the Consumer Complaint Center. Plaintiff does not identify any basis of liability relative to either individual Defendant, and the Court is unable to discern any basis.

State law does provide for liability for any harm allegedly caused by the product if:

(a) The seller failed to exercise reasonable care, including breach of any implied warranty, with respect to the product and that failure was a proximate cause of the person's injuries; or

(b) The seller made an express warranty as to the product, the product failed to conform to the warranty, and the failure to conform to the warranty was a proximate cause of the person's harm.

Mich Comp. Laws § 600.2947(6)(a), (b).  Thus, the plain language of the statute predicates KMA's liability on a failure to exercise "reasonable care" or a breach of an implied or express warranty.  The Court examines each basis below.

### 1.  Reasonable care

In <u>Mills v. Curioni, Inc.</u>, 238 F.Supp.2d 876, 886 (E.D. Mich. 2002), Judge Rosen noted that the state courts had not addressed the scope of a seller's duty to exercise reasonable care under the tort aspect of the statute and began his analysis with consideration of the legislative history.

The legislative history of Section 2947 reveals the Legislature's intent to limit the liability of sellers only to those cases where their independent negligence is shown. The Senate Fiscal Agency's report on the product liability measures of Michigan's tort reform legislation explains: By holding sellers responsible for their own wrongdoing, the bill would eliminate unnecessary and burdensome legal costs and insurance premiums. Since manufacturers ultimately indemnify sellers for the harm caused by the manufacturers' own products, claims should be brought directly against them.  [Senate Fiscal Agency Analysis of S.B. 344, p. 10.]

He noted that the Sixth Circuit "has held that to establish a seller's `independent negligence' under the Michigan statute" a plaintiff must advance "proof that the seller knew or had reason to know the product was defective." <u>Id.</u> (citing <u>Hollister v. Dayton Hudson Corp.</u>, 201 F.3d 731, 736 (6th Cir.2000) (affirming the lower court's dismissal of a

4

negligence claim against the seller because the plaintiff "failed to offer any evidence of negligence on [the defendant's] part, such as proof that the retailer knew of the shirt's extreme flammability or that it had received consumer complaints about the shirt in the past")).

In the instant case, Plaintiff has failed to advance any evidence of independent negligence on the part of KMA. The only evidence he presents to the Court is a list of 47 consumers, who apparently have reported fires in Kia Spectras. See Pl.'s Ex. A to Addendum to Plaintiff's Response to Oppose Defendant's Motion for Summary Judgment. The list, standing alone, is insufficient as a matter of law, to show that KMA knew of any consumer complaints about the KIA Spectra or that the fires occurred under circumstances akin to those giving rise to the fire in Plaintiff's KIA Spectra. Therefore, he can meet subsection (a) of the governing statute only if he shows a breach of implied warranty.

### 2. Implied warranty of merchantability

In its motion, Defendant incorrectly formulates Plaintiff's burden to prove a breach of implied warranty of merchantability as synonymous with the burden of proving a manufacturing defect. Gregory v. Cincinnati, Inc., 450 Mich. 1, 34, 538 N.W.2d 325, 339 (1995). A breach of implied warranty of merchantability differs from that of an express warranty in that the jury may conclude there was a breach of implied warranty of merchantability without finding a specific defect in materials or workmanship. Kenkel v. The Stanley Works, 256 Mich.App 548, 556; 665 NW2d 490 (2003). Accord Snider v. Bob Thibodeau Ford, Inc., 42 Mich.App. 708, 717, 202 N.W.2d 727, 732 (1972) (noting that the exact type of defect need only be specified when there is more than one credible source to which a product failure could be attributed). Although it is likely that most implied

5

warranty claims will concern manufacturing defects, that need not be the case. Consequently, Plaintiff is under no obligation to specify a perceived defect when suing under an implied warranty theory, nor to offer expert testimony as to its existence, and his failure to do so standing alone does not satisfy KMA's burden on its motion for summary judgment.

Although Plaintiff's Complaint did not specify a basis for a claim of breach of implied warranty, his subsequent pleadings indicate that Plaintiff proceeds on a theory that the source of the fire was the catalytic converter. Plaintiff believes that the fire destroyed the car's brake and fuel lines. At oral argument, Plaintiff clarified his position that the catalytic converter rendered the car unfit for its use, a claim for which he offers no proof. Plaintiff mistakenly relies on the report of Defendant's expert as support for his position.

 According to the report, "Rimkus researched the vehicle owner's manual and noted that the manual stated that when there are signs of engine malfunction; such as misfire or noticeable loss of performance, the vehicle is not to be operated because it could damage the catalytic converter and exhaust system." Def.'s Ex. 11.  Defendant's expert concludes that the fire in Plaintiff's car "probably occurred due to the driver continuing to operate the vehicle when there were notable signs of engine trouble." Id.

Plaintiff ignores these portions of the report, which undermine his case.  Instead he selectively highlights to the Court that portion of the report that reads: "Rimkus Consulting Group Inc.. . .found that if a vehicle such as the KIA Spectra ran with an engine miss, unburned vapors not ignited by fouled spark plugs could have been passed through the exhaust system and ignited in the catalytic converter unit at the bottom of the vehicle." Id. Plaintiff does not respond to the expert's caveat that "since this part was missing we [sic]

6

could not conclude with any certainty that this indeed happened."  Def.'s Ex. 11 at 5.

Plaintiff's selective reading of the report does not meet his burden on summary judgment.  "Under an implied warranty of merchantability the seller warrants that the goods are fit for the ordinary purposes for which the goods are used."  Latimer v. William Mueller & Son, Inc., 149 Mich. App. 620, 632 (1986) (citation omitted).  See Mich.Comp.Laws § 440.2314 (providing that "[u]nless excluded or modified. . .a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind").  A defect may be established by proof that a product is not reasonably fit for its intended, anticipated or reasonably foreseeable use. The Court is mindful that a warranty of merchantability merely means that goods are of average quality in the industry; the warranty does not guarantee that the goods are perfect.  Guaranteed Constr. Co. v. Gold Bond Products, 153 Mich.App. 385, 392-393, 395 N.W.2d 332 (1986) (citations omitted). Once the buyer has accepted the goods, he bears the burden of establishing any claimed breach of warranty.  Id.

Nevertheless, the evidence advanced by Plaintiff is insufficient to place before the Court the question of whether Plaintiff's car was reasonably fit for its intended use.  The mere occurrence of the fire is insufficient to sustain the claim.  Although Plaintiff does not need an expert to advance a breach of implied warranty claim, he has failed to advance any evidence contesting the opinion of Defendant's expert.  According to Defendant's expert, Plaintiff's failure to service the engine as directed in the owner's manual resulted in the fire.  Moreover, it appears that Plaintiff had driven the car for at least 60,000 miles when this incident occurred.  See Attachment E to Expert's Report.  This fact, combined with the expert's opinion, undermines Plaintiff's contention that the car was not reasonably

7

fit for its intended use. Accordingly, Plaintiff cannot succeed on this issue as a matter of law, and the sole remaining basis[2] for imposing liability on KMA is breach of express warranty.

### 3. Breach of express warranty

KMA argues that its liability is limited to the express warranties in the 2002 Warranty and Consumer Information Manual that accompanied the 2002 Kia Spectra. See Def.'s Ex. 9. It adds that it complied with the warranty; and it had no duty to replace the car. Plaintiff disagrees.

The Warranty and Consumer Information Manual provides that the Kia vehicle is free from defects in material or workmanship subject to specified terms and conditions. Def.'s Ex. 9. Several of the terms and conditions are relevant to this dispute, including the following:

> [t]he liability of Kia under this warranty is limited solely to the repair or replacement of parts defective in Kia-supplied material or workmanship by an Authorized Kia Dealer at its place of business, and specifically does not include any expense of or related to transportation to such a Dealer or payment for loss of use of the Kia vehicle during warranty repairs.

---

[2]In his Addendum to Response to Defendants' Reply to Defendant's Motion for Summary Judgment, Plaintiff mentions the Michigan Lemon Law. Plaintiff did not plead a claim under the statute. Moreover, the facts of this case do not support such a claim. Under Mich.Comp.L.§ 257.1402, "If a new motor vehicle has any defect or condition that impairs the use or value of the new motor vehicle to the consumer or which prevents the new motor vehicle from conforming to the manufacturer's express warranty. . . the customer must report the defect during the term of the express warrant or not later than one year from the date of delivery of the new motor vehicle. . . .whichever is earlier." Plaintiff has offered no evidence to show that his claim falls within the protections of lemon law.

8

Id. at p. 6.   Defendant also refers the Court to those sections[3] that explain what is not covered under the limited warranty.   Specifically, the warranty excludes "any economic loss or other incidental, special, consequential or exemplary damages.  This includes, without limitation, payment for loss of the use of the Kia Vehicle, lodging, car rentals, travel costs, loss of pay and of any other expenses or damages."  Id. at 8.  Finally the Warranty provides a disclaimer of matters not included in the express warranty:

> THIS WARRANTY IS GIVEN IN LIEU OF ALL OTHER EXPRESSED WARRANTIES (EXCEPT THOSE SET FORTH SEPARATELY IN THIS MANUAL) ON THE PART OF KIA MOTORS AMERICAN, INC. OR THE AUTHORIZED KIA DEALER SELLING THE KIA VEHICLE. . .KIA MOTORS AMERICA, INC. SHALL NOT BE LIABLE FOR ANY ECONOMIC LOSS, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR EXEMPLARY DAMAGES, OR ANY SERVICE NOT EXPRESSLY PROVIDED FOR HEREIN.

Id. At 10, (emphasis in original).

Mich.Comp.Law. § 440.2313(b) provides that: "A description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."  A breach of warranty is essentially a breach of contract. Plymouth Pointe Condominium Ass'n v. Delcor Homes Plymouth Pointe, LLC, No. 233847, 2003 WL 21978751 at *5 (Mich. App., August 19, 2003).   The breach in a breach of warranty action "occurs when it is finally determined that the warrantor will not satisfy the terms of the warranty."  Id. (citation omitted).  That did not happen here.

The repair or replace warranty does not promise that Plaintiff would never have a

---

[3]Under "Damage Due to Factors beyond the Manufacturer's Control," KMA excludes "accidents such as collision, fire, theft, riot, etc."  KMA's reliance on this provision is misplaced.  If the fire was cased by a defective part, this provision does not preclude Plaintiff from damages that resulted.

vehicle problem.  It merely promises the repair or replacement of defects in materials or workmanship.  Under the express terms of the warranty, Plaintiff must prove, as a threshold matter, the existence of a defect in material or workmanship.  He cannot meet his burden to do so merely by proving that the fire occurred.  Nor can he meet his burden by relying on the comments of an insurance adjuster (which have not been provided to the Court) or the comments of an auto mechanic made to him before he filed the suit.   Again, Plaintiff has failed to advance any evidence upon which a reasonable jury could find Defendant had breached an express warranty to Plaintiff.  Accordingly, to the extent Plaintiff alleges a claim for breach of express warranty, it too fails as a matter of law.

## IV. CONCLUSION

In sum, Plaintiff's response to Defendant's motion has failed to show the existence of a genuine issue of material fact on any conceivable theory of liability.   Accordingly, Defendant's Motion for Summary Judgment is GRANTED.

Because Plaintiff has not alleged any basis of liability as to Defendant Hirshfield, IT IS FURTHER ORDERED that Plaintiff's Complaint is DISMISSED in its entirety.


s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE


Dated: October 14, 2005

10

## CERTIFICATE OF SERVICE

Copies of this Order were mailed to Melvin Williams and Ronald Wernette, Jr. on this date by ordinary mail and/or electronic filing.

s/Bernadette M. Thebolt
Deputy Clerk